NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 116

No. 2015-460

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Criminal Division |
| | |
| James Scarola | April Term, 2017 |

Michael S. Kupersmith, J. (Ret.), Specially Assigned

Thomas J. Donovan, Jr., Chittenden County State's Attorney, and Pamela Hall Johnson, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

Charles S. Martin and Allison N. Fulcher of Martin & Associates, Barre, for Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson and Eaton, JJ., and Dooley, J. (Ret.), Specially Assigned

¶ 1. **REIBER, C.J.** Defendant appeals the denial of his motion to withdraw three pleas stemming from his alleged assault of his wife at their Burlington home. First, defendant argues that the trial court erred, to his prejudice, because it did not allow him to withdraw his pleas even though he did not know that he would be sentenced the same day as his change-of-plea hearing and there was neither a presentence investigation nor a personal waiver of that investigation by defendant. Second, defendant argues that he must be allowed to withdraw his plea because the court erroneously participated in the plea agreement process. We affirm.

¶ 2.     In September 2013, defendant called 911 and reported that he had struck his wife and that she was "hurt pretty bad," unconscious, and "gurgling blood." Burlington Police Department officers responded to the scene. According to police affidavits, defendant described that he had struck his wife in the head with a baseball bat after she had struck him. An officer at the scene further reported that the victim was found lying on a bed in a downstairs bedroom. There was blood "on the stairs" leading to the bedroom, "on the victim's bed where she was found," and also "distributed on the walls and ceiling." Moreover, "there was an aluminum baseball bat present which appeared to have blood on it as well." After further questioning at police headquarters, officers arrested defendant for domestic assault. The State then charged defendant with aggravated domestic assault and attempted second-degree murder but later amended the attempted second-degree murder charge to attempted aggravated murder.

¶ 3.     The court held a hearing on March 17, 2015, regarding a motion in limine and jury questionnaires. After the hearing, the court met in chambers with defense counsel and the State to discuss resolution of the case. The court suggested that twenty years to life could be a reasonable sentence. The next day, defense counsel met with defendant at the correctional facility where he was being held to discuss a potential plea agreement. They discussed whether defendant would accept a sentence of twenty years to life, as suggested by the court, but were unable to discuss the details of the plea agreement, which had not yet been addressed by the State. The meeting lasted most of the morning, and defendant was able to speak with his family by telephone. Defense counsel told defendant that he would need to make a decision within five days, by March 23, because trial was scheduled for April 1, and both parties needed time to prepare further. After speaking with his family about the issue, defendant told defense counsel that he was interested in a plea agreement calling for a sentence of twenty years to life.

¶ 4.     The next day, defense counsel conferred with the State and indicated defendant's interest in a plea agreement. The State was open to a sentence of twenty years to life but insisted

2

that defendant plead to not only the two original charges of aggravated domestic assault and attempted second-degree murder, but also to a third charge of sexual assault. Defendant was hesitant to plead to sexual assault but appeared more open to accepting the State's offer after the State reiterated its position that there would be no plea without the sexual assault component.

¶ 5. Defense counsel continued to discuss the plea with defendant and the State over the course of three days and made clear to defendant that if he accepted the plea agreement, it would be a "done deal" and he would serve twenty years to life. They did not discuss when sentencing would happen, or whether defendant would waive the presentence investigation for any of the charges. Defendant told his counsel that he would accept the plea agreement by pleading guilty to aggravated domestic assault and pleading no contest to attempted second-degree murder and sexual assault, and an agreement was readied.

¶ 6. On March 23, 2015, defense counsel and the State met in chambers to inform the court that they had reached a plea agreement. They discussed the appropriate time for sentencing, agreeing that sentencing could take place immediately for the first two charges of aggravated domestic assault and attempted second-degree murder but that sentencing for the sexual assault charge could not take place until the presentence investigation was completed, as required by statute. Following this conversation, defendant was presented at the courthouse with a written copy of the plea agreement, containing all the previously discussed terms. Defense counsel also informed him that he would be sentenced that day on the first two charges, and that he would be sentenced on the sexual assault charge after the presentence investigation was completed. The court then held a change-of-plea hearing and sentenced defendant to fourteen to fifteen years for the aggravated domestic assault charge and twenty years to life for the attempted second-degree murder charge, with both sentences to be served concurrently. The court deferred sentencing on the sexual assault charge pending the presentence investigation.

3

¶ 7. Three months later, defendant—through new counsel—filed a motion to withdraw his no contest plea to the sexual assault charge, followed two months later by an amended motion to also withdraw his guilty plea to the aggravated domestic assault charge and his no contest plea to the attempted second-degree murder charge. In the motions, defendant first noted that Vermont Rule of Criminal Procedure 32(d) allows for the withdrawal of pleas under certain circumstances. He argued: (1) "[h]e did not knowingly and intelligently enter into the plea agreement"; (2) "he was suffering from a high fever and the flu and did not fully understand the proceedings"; (3) "[h]e had inadequate time to fully understand the terms of the agreement"; (4) defense counsel did not "adequately explain the terms and conditions of the agreement"; (5) "[h]e did not understand that he was to be sentenced that day" for the aggravated domestic assault charge and the attempted second-degree murder charge; and (6) he did not understand that there would be no presentence investigation for those two charges.

¶ 8. On September 4, 2015, the court held a hearing on the motion, in which both defendant and his previous counsel testified. At this hearing, defendant further argued that he only accepted the agreement because he thought he would be able to present evidence in mitigation of his sentences.

¶ 9. The court issued an order on October 28, 2015, in which it determined that there was no evidence to support defendant's claims other than defendant's "own conclusory testimony." To the contrary, the court observed that there were several facts in the record indicating that defendant fully understood the plea agreement, knew that he would not have the opportunity to present evidence in mitigation of his sentences, and knew that his sentence would be twenty years to life. Those facts included: (1) defendant "discussed the terms and conditions of the plea agreement with his attorneys over a period of five days prior to changing his plea"; (2) "the written plea agreement contains no such proviso [regarding mitigation]: it says plainly that the parties agree that the [c]ourt impose a sentence of '20 years-life' "; (3) defense counsel told

4

defendant that the plea agreement did not contain a provision allowing for mitigation and that accepting the plea agreement would mean that a sentence of twenty years to life was a "done deal"; (4) defendant responded "no" when he was asked multiple times during the change-of-plea hearing if anyone had induced him to accept the agreement and if he had any further questions for the court or for his attorneys; (5) on three occasions during the hearing, the court acknowledged defendant was feeling ill and the hearing could be rescheduled if he would prefer, but defendant repeatedly indicated he could think clearly and understand the proceedings; (6) the State mentioned in its sentencing argument that defendant would "serve two decades in jail" under the agreement, and defendant acknowledged that he knew that two decades was twenty years and did not protest this amount of time; and (7) "there was no possible prejudice to the Defendant" in that "it is not unusual for a court to sentence a defendant on the day of his or her change of plea, even in felony cases" and defendant did not object at the hearing when the court told him that it would "proceed with sentencing" on the first two charges.

¶ 10.    The court further noted that the record indicated that defendant had not personally waived the presentence investigation for the first two charges; in other words, the waiver was done by defendant's counsel, not by defendant himself. The court determined, however, that completion of a presentence investigation "does not affect a constitutional right" and there is no requirement that a defendant—rather than his or her counsel, as occurred in this case—personally waive the investigation. It therefore held that because defendant "received the sentence that he had bargained for and that he had agreed to," he experienced no prejudice from the lack of a personal waiver, so withdrawal of the pleas could not be made on that basis. It concluded its analysis of defendant's arguments by holding that defendant had failed to show a "fair and just" reason for withdrawal. In contrast, according to the court, the State would be prejudiced if defendant were allowed to withdraw his plea because it had agreed to an attempted second-degree murder charge rather than

an attempted aggravated murder charge—which could have carried a life sentence—only because of defendant's change of plea.

¶ 11. Finally—after noting that defendant's new counsel raised the issue when questioning defendant's previous counsel during the motion hearing—the court addressed whether its role in the March 17, 2015, in-chambers plea discussions violated Vermont Rule of Criminal Procedure 11(e)(1). That rule provides that "[t]he court shall not participate in any [plea agreement] discussions, unless the proceedings are taken down by a court reporter or recording equipment." The court noted that its recollection of the discussions conformed with the testimony of defendant's previous attorney. It concluded that Rule 11(e)(1) was not violated. The court stated that it "outlined the strengths and weaknesses of the respective positions" and "simply 'floated' a suggestion" of twenty years to life, but "did not suggest details for the agreement" and did not "participate in any negotiations between the parties."

I.

¶ 12. Defendant first argues that the superior court erred, to his prejudice, because it did not allow him to withdraw his pleas even though he did not know that he would be sentenced the same day as his change of plea and there was neither a presentence investigation nor a personal waiver of that investigation by defendant. In support of these arguments, defendant contends that: (1) the right to have a presentence investigation conducted belongs to a defendant personally, so any waiver of that presentence investigation can only be made by a defendant personally, not by his or her attorney; (2) this claimed right is relevant to defendant's case because if defendant had had an opportunity at allocution after completion of a presentence investigation, then the court may have imposed a lower sentence; and (3) because the court was required to order a presentence investigation, defendant's sentences for aggravated domestic assault and attempted second-degree murder are not valid, so defendant could not have been considered in custody and under sentence when he filed his motions to withdraw.

6

¶ 13. Our analysis of defendant's argument rests on the interaction of several provisions of the Vermont Rules of Criminal Procedure. In combination, these rules require the court to pay careful attention to the stage in the process when a defendant moves to withdraw. Motions to withdraw are not allowed under our rules if the defendant is already serving his or her term of imprisonment. Different standards apply depending on whether the motion is made before or after sentencing.

¶ 14. Rule 32(c)(1) specifies that the court may exercise its discretion to dispense with a presentence investigation if the defendant requests that sentencing be made without such an investigation:

> A presentence investigation shall not be initiated until there has been an adjudication of guilt, unless the defendant consents to such action. . . . [T]he court, in its discretion, may dispense with the report, in the following situations:
>
> (C) if the defendant refuses to be interviewed by a probation officer or requests that disposition be made without a presentence report;

V.R.Cr.P. 32(c)(1) (emphasis added). Moreover, Rule 32(d) specifies that defendants may make a motion to withdraw within thirty days after any judgment, including a term of imprisonment, but only if they are not in custody under sentence:

> A motion to withdraw a plea of guilty or of nolo contendere may be made only by a defendant who is not in custody under sentence. The motion must be made prior to or within 30 days after the date of entry of judgment, except that a defendant whose sentence does not include a term of imprisonment may make the motion at any time.

V.R.Cr.P. 32(d) (emphasis added); see also State v. Brooks, 170 Vt. 597, 599, 750 A.2d 1000, 1002 (2000) (mem.) ("[A] defendant who is in custody under sentence may not file a motion to withdraw his or her guilty plea."). If any one of these requirements is not met, then the court lacks jurisdiction to consider the defendant's motion. See id. at 599, 750 A.2d at 1002 ("[B]ecause

defendant was in custody under sentence when he brought his motion to withdraw, the court had no jurisdiction to hear the motion.").

¶ 15. The Rule goes on to explain two different standards the court must use when assessing whether to grant a defendant's motion to withdraw. First, if the defendant makes the motion <u>before</u> the court imposes sentence, then the court may grant the motion if the defendant shows a "fair and just reason" for withdrawal of the plea and that reason substantially outweighs any potential prejudice to the State:

> If the motion is made before sentence is imposed or deferred, the court may permit withdrawal of the plea if the defendant <u>shows any fair and just reason</u> and that reason <u>substantially outweighs any prejudice</u> which would result to the state from the withdrawal of the plea.

V.R.Cr.P. 32(d) (emphases added). In applying this provision, the court must exercise its discretion liberally in favor of withdrawal of the plea. See <u>State v. Belanus</u>, 144 Vt. 166, 169-70, 475 A.2d 227, 229 (1984) ("Although withdrawal of a plea of guilty or nolo contendere is within the discretion of the sentencing judge, that discretion is not absolute. It must be exercised liberally in favor of withdrawal of the plea."). Second, if the defendant makes the motion <u>after</u> the court imposes sentence, then the court may grant the motion only if not doing so would cause a "manifest injustice":

> If the motion is made after sentence, the court may set aside the judgment of conviction and permit withdrawal of the plea <u>only to correct manifest injustice</u>.

V.R.Cr.P. 32(d) (emphasis added).

¶ 16. The difference between the two standards, "fair and just reason" and "manifest injustice," for presentence or post-sentence motions to withdraw is further explored in the Reporter's Notes to Rule 32. The Notes explain that Rule 32(d) derives from its federal equivalent. Presentence motions may be granted "with great liberality," but post-sentence motions are subject to a "more rigorous standard":

8

> In general, the federal courts have granted motions to withdraw before sentence with great liberality, allowing them where the reason is fair and just and the prosecution has not relied on the plea to its substantial prejudice . . . . A more rigorous standard is embodied in the "manifest injustice" test to be applied after sentence.

Reporter's Notes, Rule 32. The Notes explain that a "manifest injustice" may exist if the defendant did not agree to the plea voluntarily or with the advice of counsel, if the State violated the plea agreement, or if the plea requirements of Vermont Rule of Criminal Procedure 11 were not followed:

> Where . . . there is evidence that the plea was not voluntary or not made with the advice of counsel, where the prosecution has breached a plea agreement, or where the requirements for taking the plea imposed under Rule 11 have not been complied with, the motion to withdraw should be allowed.

Id.

¶ 17. These provisions require the court to apply the standard proper to the stage of proceedings when a defendant files a motion to withdraw. The relevant facts here are that the court accepted defendant's three pleas at the change-of-plea hearing on March 23, 2015, and then immediately sentenced defendant to fourteen to fifteen years for the aggravated domestic assault charge and twenty years to life for the attempted second-degree murder charge. It deferred sentencing on the sexual assault charge pending the presentence investigation. On June 22, 2015—three months later—defendant filed his first motion to withdraw his no contest plea for the sexual assault charge, and on August 17, 2015—nearly five months after sentencing—he filed his amended motion to withdraw his pleas to the two remaining charges.

¶ 18. The dates when a defendant files his or her motions to withdraw are relevant because they determine whether the court has jurisdiction to assess the defendant's arguments. But here, defendant argues this case is an exception and that the dates of his motions are not relevant to his appeal regarding the aggravated domestic assault and attempted second-degree murder charges. He contends that he could not have been considered in custody and under

9

sentence when he filed his motion to withdraw these pleas because he never personally waived the presence investigations for any of his charges—rather, his counsel did.

¶ 19. We are unconvinced. Waiver of any presence investigation need not be made personally by a defendant. Presence investigations are a practical measure of statutory origin intended to assist the court in determining sentences; they do not derive from any constitutional right. Moreover, the statute regarding presence investigations specifies that waiver is generally allowed "if the defendant . . . requests that disposition be made without a presence report." V.R.Cr.P. 32(c)(1)(C). It does not specify that waiver must be made by the defendant personally. Thus, a defendant's attorney generally can waive a presence investigation on behalf of the defendant. Here, defendant's attorney did so for the aggravated domestic assault and attempted second-degree murder charges. These presence investigations were therefore properly waived under Rule 32(c)(1)(C).

¶ 20. With this guidance in mind, the record shows that defendant was "in custody under sentence" for purposes of Rule 32(d) at the time he filed his motion to withdraw the aggravated domestic assault and attempted second-degree murder charges because he had already been sentenced. Moreover, his motion to withdraw those pleas fell outside the thirty-day window of Rule 32(d). Thus, the court lacked jurisdiction to rule on that motion. See V.R.Cr.P. 32(d); see also Brooks, 170 Vt. at 599, 750 A.2d at 1002. Accordingly, we do not address either defendant's motion to withdraw those two pleas or his substantive arguments in support of that motion. V.R.Cr.P. 32(d).

¶ 21. In contrast, the record shows the court did have jurisdiction to assess defendant's motion to withdraw his plea of no contest to the sexual assault charge. For this charge, defendant was not yet "in custody under sentence" when he moved to withdraw his plea because the court deferred sentencing pending the statutorily required presence investigation. At the time he filed his motion, defendant was not serving any sentence for the sexual assault charge. The correct

10

standard to apply in this context is the first of the two standards contained within Rule 32(d): the court may grant the motion if the defendant shows a "fair and just reason" for withdrawal of the plea and that reason substantially outweighs any potential prejudice to the State. Id.

¶ 22.   The court's order denying defendant's motion shows that it correctly applied this standard. Addressing the first requirement of Rule 32(d), the court noted that "the Defendant has not offered a fair or just reason. It appears that Defendant wishes to withdraw his plea simply because he has changed his mind." This conclusion was based on several facts, including: (1) defendant discussed the plea agreement with his attorneys for five days before changing his plea; (2) the agreement contained no provision regarding mitigation; (3) defense counsel specifically told defendant that the plea agreement did not contain a provision allowing for mitigation; (4) defendant denied being induced to accept the agreement and declined rescheduling the hearing for his illness; and (5) defendant acknowledged at the hearing that he would serve twenty years in jail.

¶ 23.   Addressing the second requirement of Rule 32(d), the court noted that "although not determinative, there would be prejudice to the State if the [c]ourt were to allow Defendant to withdraw his plea." The court explained that the State reduced the severity of the attempted murder charge from attempted aggravated murder—which would have carried a potential sentence of life imprisonment without parole—to attempted second-degree murder. The State did so only to gain defendant's acceptance of the plea agreement, and defendant was sentenced to twenty years to life for the attempted second-degree murder charge. As explained below, if the court had allowed defendant to withdraw his plea on the sexual assault charge, it would have also had to allow withdrawal of the other two charges and double jeopardy would prevent the State from seeking a sentence of life imprisonment without parole even if defendant were convicted at trial.

¶ 24.   Although we conclude that the superior court acted within its discretion in denying defendant's motion to withdraw his plea to the sexual assault charge, we do not endorse the process

11

followed by the court in sentencing defendant. By sentencing defendant on two of the three counts that comprised a global plea agreement, while deferring sentencing on the third count until completion of the statutorily-required presentence investigation, the parties and court created a potential procedural quagmire.

¶ 25. The agreement at issue was a global one—the parties' assents to the pleas and recommended sentences with respect to each of the counts at issue were dependent in part on their agreements with respect to each of the others. The superior court found that, as part of the global plea agreement, the State agreed to accept an effective sentence of twenty years to life, rather than the life-without-parole sentence that it could have sought pursuant to a charge of attempted aggravated murder. The State amended the attempted aggravated murder charge to attempted second-degree murder as part of the parties' deal. The State's agreement was contingent on defendant's pleading guilty or no contest to aggravated domestic assault, attempted second-degree murder, and sexual assault. But after accepting the pleas, the court proceeded to sentence defendant on two of the counts, effective immediately, while deferring sentencing on the third to allow for a statutorily required presentence investigation. In doing so, the court divided the global plea agreement into two separate parts, setting each on a distinct procedural path, subject to divergent standards and reviewability.

¶ 26. Upon imposition of his sentence on two of the charges for which he was convicted, and expiration of the time for direct appeal of his convictions and sentences on those counts, defendant's sole avenue for withdrawing his pleas was a collateral proceeding in the civil division for post-conviction relief. See V.R.Cr.P. § 32(d) ("A motion to withdraw a plea of guilty or of [no contest] may be made only by a defendant who is not in custody under sentence."); id., Reporter's Notes, 1980 Amendment ("The phrase 'in custody under sentence' is the language of 13 V.SA. § 7131. Its use makes clear that the procedure of [Rule 32(d)] applies only when the statutory relief procedure is inapplicable. Thus, only defendants whose sentence does not include a term of

12

imprisonment or who have not yet begun to serve a sentence of imprisonment that has been imposed may move for withdrawal of plea."); 13 V.S.A. §§ 7131-7137 (providing procedure for collateral post-conviction review for prisoners in custody under sentence).

¶ 27. Meanwhile, the criminal division was empowered to permit defendant to withdraw his no contest plea for the third charge of sexual assault upon motion for "any fair and just reason" that "substantially outweighs any prejudice which would result to the state from the withdrawal of the plea." V.R.Cr.P. § 32(d).

¶ 28. Given these divergent standards, courts, and processes, this case could have unfolded in a number of ways—some to the State's detriment, some to defendant's. On direct appeal or in PCR proceedings in the civil division, courts could have authorized defendant to withdraw his pleas regarding the attempted second-degree murder and domestic assault counts, while the criminal division declined such relief with respect to the sexual assault count. Or things could have progressed the other way around. In either case, the result could defy the parties' agreement and the criminal division's intent in accepting the plea deal.

¶ 29. For example, given the liberal standard that applies to presentence motions to withdraw a plea, the superior court would have been well within its discretion in granting defendant's motion to withdraw his no contest plea on the sexual assault count. But doing so would have undermined the global plea agreement from the State's perspective—leaving defendant with the benefit of the effective sentence to which the State agreed without the corresponding no contest plea to the sexual assault charge. Had this happened, it's not at all clear that the State would have had any avenue for trying to unwind the deal as a whole. Defendant had begun serving his sentence on the other two counts; the appeal period with respect to those counts had expired; and post-conviction relief is available only to a convicted defendant, not the State. The State would have lost the benefit of its bargain.

¶ 30. On the other hand, if the superior court relied upon this prejudice to the State in denying defendant's motion to withdraw his plea, that would have unfairly prejudiced defendant. That is, the criminal division could have weighed against defendant the fact that an order affording him permission to withdraw his no contest plea to the sexual assault count would prejudice the State by depriving it of the benefit of its global plea deal with no mechanism for rescinding the agreement. Had the superior court relied on this factor to overcome the otherwise liberal standard for granting presentence motions to withdraw, then its own process, rather than any intrinsic prejudice to the State resulting from defendant's desire to withdraw his no contest plea, could have served as the major obstacle to defendant's ability to seek resolution of the sexual assault case on the merits.[*]

¶ 31. To be sure, the superior court handled the change of plea and partial-sentencing hearing in the way the parties advocated; however, for the reasons noted above, the potential pitfalls arising from such an approach outweigh any upside. Had the superior court deferred the sentencing on all charges until completion of the presentence investigation, not only would it have had the benefit of that report in imposing sentence, but it would have avoided the complications described above. For these reasons, we do not endorse the trial court's methodology here.

---

[*] The superior court did specifically note that the State would suffer the prejudice described above if it allowed defendant to withdraw his no contest plea on the sexual assault charge. As noted, however, the superior court stated that this factor was not determinative, which we take to mean that its denial of defendant's motion rests on its detailed findings and conclusion that defendant had failed to establish any "fair and just reason," rather than on a consideration of prejudice to the State. If the prejudice to the State had been a factor tipping the balance in the superior court's decision, it would have been a factor easily avoided by deferring the sentencing on all three charges until completion of the presentence investigation. In asking the court to sentence defendant on two of the three charges, and delaying the sentencing on the sexual assault charge, defendant did not waive his protections under Rule 32(d); it was the State that took the risk that the deal would fall through with respect to the sexual assault charge, leaving it with no ability to reinstate the aggravated murder charge and the possibility of a life-without-parole sentence. For that reason, if we concluded that the prejudice to the State described by the trial court was a factor affecting the superior court's decision to deny defendant's motion, then we would conclude that the court abused its discretion.

## II.

¶ 32. Next, defendant argues that he must be allowed to withdraw his plea because the superior court erroneously participated in the plea agreement process in violation of Vermont Rule of Criminal Procedure 11(e)(1). Defendant acknowledges that Rule 11(e)(1) departs from the standards of the Federal Rules of Criminal Procedure because it allows the court to participate in negotiations so long as they are on the record. He points out, however, that the in-chambers negotiations were not recorded, that there is substantial evidence the court was involved in the negotiations, and that the court suggested twenty years to life as a reasonable sentence. Defendant therefore urges this Court not to give undue weight to evidence suggesting otherwise—such as the court's statement in its order that it "simply 'floated' a suggestion." He argues that the court's involvement violated Rule 11(e)(1) because it was not on the record and cannot be reviewed adequately.

¶ 33. Rule 11(e)(1) states:

> The prosecuting attorney and the attorney for the defendant, or the defendant when acting pro se, may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the prosecuting attorney will move for dismissal of other charges, or will recommend or not oppose the imposition of a particular sentence, or will do both. <u>The court shall not participate in any such discussions, unless the proceedings are taken down by a court reporter or recording equipment.</u>

V.R.Cr.P. 11(e)(1) (emphasis added). Reversal is not warranted if the court substantially complied with the requirements of Rule 11 or if the court's alleged violation during the change-of-plea hearing was merely technical. <u>State v. Marku</u>, 2004 VT 31, ¶ 22, 176 Vt. 607, 850 A.2d 993 (mem.) ("We require only substantial compliance with the requirements of Rule 11, and we will not reverse if the alleged violation is merely a technical violation."). Furthermore, in this case we consider whether there was plain error because defendant did not object to the court's involvement at the change-of-plea hearing. <u>Id</u>. ("A defendant who fails to object to an error during the plea

colloquy may obtain reversal only upon a showing of plain error."). Plain error exists only if the error would result in a "miscarriage of justice." State v. Kinney, 171 Vt. 239, 253, 762 A.2d 833, 844 (2000). Moreover, this standard should be viewed according to the purpose of Rule 11(e)(1)'s recording requirement, which is to allow review of "claims that the court was prejudiced or exerted undue influence." State v. Davis, 155 Vt. 417, 422, 584 A.2d 1146, 1148 (1990).

¶ 34. Based on a review of the motion hearing testimony of defendant and his previous counsel, as well as the court's own account of the in-chambers meeting, the court merely told the parties that it believed twenty years to life would be a good resolution to the case. Before this suggestion, the State was unwilling to pursue a plea agreement for less than twenty-five years to life. Indeed, at the motion hearing, defendant testified regarding that issue:

> Defendant's motion counsel: So the—prior to the March 17th, 2015 date, did you—were you made aware that the State had made an offer to resolve your case?
>
> . . .
>
> Defendant: As I recall, there was no offer made, that I was told over a year ago that the State, because of public clamor, would not back down from twenty-five to life.

Defendant's previous counsel confirmed this:

> Defendant's motion counsel: And at least during that meeting, again, after the chambers conference, the State had not yet moved off of their number of twenty-five to life?
>
> Defendant's previous counsel: Correct.

The record thus shows that the court did not make a suggestion resulting in defendant receiving a worse offer from the State, which demonstrates that defendant was not "prejudiced" and the court did not exert "undue influence." Davis, 155 Vt. at 422, 584 A.2d at 1148.

¶ 35. Moreover, although the court " 'floated' a suggestion" at a conference aimed at resolution, the court was not a part of any back-and-forth discussions between the parties regarding a potential plea. Nothing in the record demonstrates that the court "participate[d]" in plea

negotiations or the agreement reached, as prohibited by Rule 11(e)(1).  And if defendant believed that the court's suggestion was a substantial violation of Rule 11(e)(1), he had the opportunity to object, but did not do so.

Affirmed.

FOR THE COURT:

_____

Chief Justice